**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **BENCHMARK TOWING SYSTEMS,** | § | |
| **LLC, and HEAVY DUTY TOWING** | § | |
| **SAN ANTONIO, LLC d/b/a SAN** | § | |
| **ANTONIO HEAVY DUTY** | § | |
| *Plaintiffs*, | § | **CIVIL ACTION NO. 5:23-cv-614** |
| | § | |
| **v.** | § | |
| | § | |
| **CHACON BUSINESS GROUP, INC,** | § | |
| **CHACON BUSINESS GROUP, LLC** | § | |
| **CHACON HEAVY TOWING LLC,** | § | |
| **LUIS ESTEVIS CHACON III, and** | § | **JURY TRIAL REQUESTED** |
| **LANCE E. CHACON IV** | § | |
| *Defendants.* | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

NOW COME Plaintiffs, Benchmark Towing Systems, LLC and Heavy Duty Towing San

Antonio, LLC d/b/a San Antonio Heavy Duty, and for their Complaint against the Defendants

Chacon Business Group, Inc., Chacon Business Group, LLC, Chacon Heavy Towing LLC, Luis

Estevis Chacon III, and Lance E. Chacon IV (collectively referred herein as "Defendants"), hereby

allege and aver as follows:

1.     This is an action for damages and injunctive relief relating to the Defendants' use

of SAN ANTONIO HEAVY DUTY and confusingly similar variations in connection with goods

and services in commerce constituting trademark infringement, false designation of origin, false

or misleading description of fact, false or misleading representation of fact, false endorsement,

and/or unfair competition causing a likelihood of confusion as to the affiliation, connection, or

association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of their

goods, services, or commercial activities, by Plaintiffs, and misrepresenting the nature,

characteristics, qualities, or geographic origin of Defendants' goods, services, or commercial

activities in violation of the Lanham Act, 15 U.S.C. § 1125(a) *et. seq*.

## THE PARTIES

2.      Plaintiff Benchmark Towing LLC is a Texas limited liability company residing in San Antonio, Texas.

3.      Plaintiff Heavy Duty Towing San Antonio, LLC d/b/a San Antonio Heavy Duty Towing is a Texas limited liability Company residing in San Antonio, Texas.

4.      Defendant Chacon Business Group, Inc. is a Texas corporation residing in Bexar County, Texas and service of process may be effectuated through its Registered Agent, Luis Chacon, 12880 Tomlynn, Atascosa, TX 78002.

5.      Defendant Chacon Heavy Towing, LLC is a Texas limited liability company residing in Bexar County, Texas and service of process may be effectuated through its Managing Member, Luis Chacon, 12880 Tomlynn, Atascosa, TX 78002.

6.      Defendant Chacon Business Group, LLC is a Texas limited liability company residing in Bexar County, Texas and service of process may be effectuated through its Registered Agent, Anna M. Torres & Associates PC, 14603 Huebner Rd., Bldg. 23, San Antonio, TX 78230.

7.      Defendant Luis Estevis Chacon III is a real person residing in Bexar County, Texas, who may be served at 12880 Tomlynn, Atascosa, TX 78002.

8.      Defendant Lance E. Chacon IV is a real person residing in Bexar County, Texas, who may be served at 12880 Tomlynn, Atascosa, TX 78002.

9.      Defendants Luis Estevis Chacon III and Lance E. Chacon control and direct the corporate and limited liability companies of Defendants (whether formally, informally, or by estoppel) in the activities of their towing business and use of Plaintiffs' trademark SAN ANTONIO HEAVY DUTY and confusingly similar marks.

10.    Defendants each knowingly participated in and directed the misappropriation and infringement of Plaintiffs' trademark or service mark and name SAN ANTONIO HEAVY DUTY and confusingly similar variations and are jointly and severally liable for the wrongful conduct complained of herein.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. § 1121, because federal courts have jurisdiction over Lanham Act cases, which arise under federal law and raise federal questions.

12.    This Court has supplemental jurisdiction over the Texas state law claims because they are so related to the federal claims that they form part of the same case or controversy pursuant to Article III of the United States Constitution.

13.    Plaintiffs, who are residents and citizens of Texas, have been injured in this District.

14.    This Court may exercise personal jurisdiction over Defendants on the grounds that, *inter alia*, Defendants are citizens of the State of Texas and Defendants and/or Defendants' agents regularly conduct commerce in the State of Texas, deriving revenue and value therefrom so as to purposefully avail themselves of the privilege of conducting activities within the State of Texas, establishing minimum contacts sufficient to confer jurisdiction over said Defendants.

15.    This Court has personal jurisdiction over Defendants because Defendants offer for sale and sell goods and services in the State of Texas, including in the Western District of Texas, under the mark SAN ANTONIO HEAVY DUTY and confusingly similar variations.

16.    This Court may exercise jurisdiction over Defendants on the grounds that, inter alia, Defendants expected their actions to be of consequence in the State of Texas and in this District and did cause and continue to cause injury to Plaintiffs in the State of Texas and particularly in

this District.

17.     This Court has personal jurisdiction over the Defendants by virtue of their sale of products, transaction of business, and solicitation of business within the State of Texas, within this judicial district and elsewhere.

18.     Furthermore, the assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

19.     Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

20.     Venue is proper in the Western District of Texas because a substantial part of the events giving rise to the claims occurred in this judicial district, the Defendants are subject to personal jurisdiction in this district, and the tort occurred within this judicial district and within others.

## **FACTUAL ALLEGATIONS**

21.     Plaintiffs operate a famous heavy equipment towing service company headquartered in San Antonio, Texas.

22.     Plaintiffs began their first use of SAN ANTONIO HEAVY DUTY as a trademark or service mark in 2019 for providing heavy equipment towing services.

23.     Plaintiffs own and maintain websites, https://www.facebook.com/saheavydutywrecker/ and https://sanantonioheavydutywreckerservice.business.site/, which are accessible in the Western District of Texas, wherein Plaintiffs advertise their towing service as SAN ANTONIO HEAVY

DUTY.

24.     Towing is a heavily regulated field by the Texas Department of Licensing and Regulation (TDLR) with licenses for each type of towing, including: (1) Incident Management License, (2) Private Property License and (3) Consent Tow, and a listing of tow trucks.

25.     The towing business is generally divided into two types of towing, depending on the towing capacity of the vehicle used: (1) "regular" or light equipment towing, which can include towing cars and trucks and is typically for moving improperly parked and disabled vehicles, and (2) "oversized" or heavy equipment towing, which can include towing semi-trucks, trailers, mobile homes, and all other oversized vehicles and loads, and is typically for recovery or transport.

26.     The oversized towing business is separate and distinct from regular towing, as the latter requires specialized oversized towing vehicles, such as a rotator tow truck.

27.     Most towing operations do not have oversized towing vehicles as part of their fleet.

28.     Examples of smaller, light equipment towing vehicles include flatbed or rollback tow trucks, hook-and-chain tow trucks, and wheel lift tow trucks:



Up to 10-ton capacity carrier.



Tow rating ~7500 lbs. Lift Capacity 4000 lbs. Cost varies, but can be $100,000.00.

29.    Examples of the larger, heavy equipment towing vehicles include integrated boom-and-wheel lift tow trucks and rotator tow trucks:



35-Ton, non-rotating boom. Tow rating ~80,000 lbs. Cost can be as much as $850,000.00.



100-Ton, Rolling Rotator. 53 feet rotating boom height. Boom extension 339 ft. Cost can be as much as $1,400,000.00.

30.    Wreckers are available over a wide range of tow capacities and boom capacities and cost per truck. The cost of these wreckers varies widely, with the larger capacity wreckers being the most expensive.

31.    Heavy equipment rotator tow trucks allow a tow truck operator to upright overturned and otherwise inaccessible trucks and trailers or vehicles that are off the roadway.

32.    Drivers of heavy equipment tow trucks require high skills to handle the large wreckers that are used on large vehicles.

33.    Defendants operate a regular towing service, as can be seen at https://chacontowing.com/.

34.    Defendants registered the domain name www.chacontowing.com on January 30, 2015 and set up a website using the CHACON name for light towing.

35.    Defendants decided to enter the heavy equipment towing business in around early 2021 with a single 2019 Peterbilt heavy equipment tow truck.

36.    Defendants only recently got going in their heavy equipment towing business in 2022.

37.    Defendants initially got into the heavy equipment towing business under the CHACON name in 2021, but the business languished and was not initially successful.

38.    Plaintiffs and Defendants are in the heavy equipment towing service, which operate large wreckers that are used for towing oversized vehicles and loads like 18-wheelers, trailers, and mobile homes.

39.    Plaintiff only has heavy equipment tow trucks, including a rotator tow truck that has a large and long boom that rotates on the truck boom support.

40.    Defendant does not have a rotator tow truck that is desired on certain jobs.

41.    The cost of private property towing fees is limited by the TDLR and ranges from $272 for light equipment to $978 for heavy equipment.

42.    The cost of towing large loads like an 18-wheeler with an 80,000 lb. trailer can be in the tens of thousands of dollars depending on its situation, e.g., engine breakdown versus over-turned in a collision, distances towed, and value of the towed vehicles.

43.    Heavy equipment towing services are typically divided into: (1) contract towing and (2) "house calls".

44.    Contract towing typically involves contracts with trucking operations to tow their large trucks and trailers involved in collisions and breakdowns.

45.    House calls typically involve telephone calls from new or infrequent customers operating trucking operations to tow their large trucks and trailers involved in collisions and

breakdowns.

46.    In around August 2021, Plaintiffs referred some of their overflow house call business totaling 47 calls to CHACON, which saved its struggling and failing heavy equipment towing business.

47.    CHACON expressed its gratitude for the referral of the overflow work in 2021 since it had little heavy tow business at the time and was struggling to stay afloat in heavy towing.

48.    Defendants realized that Plaintiffs were a well-established and well-known heavy equipment towing service which received a large volume of house call referrals because of Plaintiffs' reputation in the heavy equipment towing business.

49.    Defendants then changed its name and established a new website in 2022 to use Plaintiffs' name SAN ANTONIO HEAVY DUTY and variations thereof and changed its web sites to directly intercept house calls seeking to hire Plaintiffs.

50.    Defendants market and sell their SAN ANTONIO HEAVY DUTY branded goods and services to Texas residents and in the Western District of Texas.

51.    Defendants own and maintain websites,  #1 Heavy Duty Towing San Antonio TX - 24/7 Commercial Truck Towing (heavytowingsanantonio.com) and https://chacontowing.com/heavy-duty-towing-san-antonio/, which are accessible in the Western District of Texas, wherein Defendants advertise their towing service as SAN ANTONIO HEAVY DUTY.

52.    Defendants registered the domain name www.heavytowingsanantonio.com on October 19, 2022 and put up a new website in 2022 that dominantly displayed its name as follows at the same time that it minimized the use of its existing CHACON name:

Heavy Towing & Heavy Recovery San Antonio, I-10, I-410, I-35, I-37

## San Antonio Heavy Duty Towing – 24/7 Big Truck Towing & Recovery

### San Antonio Heavy Truck Towing - 24hr Diesel Truck Towing Service

### Heavy Duty Recovery San Antonio | Semi Recovery I-10, I-410, I-35, I-37

San Antonio heavy towing company, Chacon Heavy Towing San Antonio provides 24hr heavy duty truck towing services in San Antonio, on I-10, I-410, I-35, I-37, and throughout Greater San Antonio. With an extensive fleet of heavy tow trucks and recovery equipment at our disposal, we stand prepared to handle any heavy duty towing situation. Our expert heavy towing team is staffed with trained and experienced towing operators offering fast, friendly heavy towing services 24 hours a day, 7 days a week, 365 days a year. Offering affordable, local and long distance heavy towing you can trust, contact our 24hr dispatch center now at 210-985-9099.

53.    Defendants also modified its CHACON website in 2022 as follows:

## Heavy Duty Towing San Antonio

**CALL 210-896-1452**

There are not many towing companies in San Antonio that can tow your heavy duty truck. So, before you call just any towing company that may or may not have the ability or trained tow truck operator to tow your money-making rig, call a full service towing company with the right truck to do the job.

## Heavy Duty Truck Towing San Antonio

A heavy duty truck that weighs between 26,000 pounds to 33,000 pounds is considered a class 7 without a load. Class 8 heavy duty truck weighs 33,000 pounds with typically three or more axels.

Towing one of these heavy duty trucks loaded shouldn't be left to an untrained tow truck operator. For the safety of your truck and motorists on the roadway, our tow truck operators are wreckmaster certified. But, we all know training isn't all that's need when it comes to executing a hook-up and towing your heavy duty vehicle, or providing safe and secure heavy equipment transport services. It also requires knowledge and experience to get your heavy duty truck off the roadway quickly. Chacon Towing is fully insured above what the state of Texas requires and has all the certification need to tow your truck. Therefore you can rest easy knowing you are fully covered if an incident should arrive while your truck is in transport.

54.    Prior to Defendants' adoption of SAN ANTONIO HEAVY DUTY, Plaintiffs' website appeared as follows:

At **San Antonio Heavy Duty Wrecker Service**, we understand how stressful it can be to deal with a vehicle breakdown or accident. That's why our team of highly trained and experienced wrecker service professionals is dedicated to providing top-notch towing and recovery services to the residents of **San Antonio** and the surrounding areas.

When you call **San Antonio Heavy Duty Wrecker Service**, you can rest assured that you'll receive prompt and professional assistance from our team of **wrecker service** professionals. We understand that every second counts in a breakdown or accident situation, which is why we work quickly and efficiently to provide the necessary services to those in need.



When you need to transport large or heavy vehicles, you need the help of a heavy-duty towing service. At San Antonio Heavy Duty Wrecker Service, we offer top-notch heavy-duty towing and recovery services to customers in San Antonio and the surrounding areas.
Our team of highly trained and experienced professionals is equipped with state-of-the-art equipment and tow trucks that can handle even the largest and heaviest vehicles, including semi-trucks, buses, RVs, and more

At San Antonio Heavy Duty Wrecker Service. We understand how your business is important to you and we want to ensure that you are back on the road if you are ever stranded for any reason. Our 35 ton heavy duty wreckers with 80,000 pounds towing capacity is equipped with state of the art technology and tools to handle any task big or small. With 360 degree rotating boom lift, it expands the capability of handling any heavy duty or super heavy duty towing and recovery jobs from any angle so the roadway can remain open if safe.

55.    Prior to Defendants' adoption of its new name, Plaintiffs advertised on YouTube as follows:



**Heavy Duty Towing San Antonio**

San Antonio Heavy Duty Wre...    Subscribe    👍 1    👎    Share    ⬇ Download    ...

9 views   Feb 20, 2023

When you need to transport large or heavy vehicles, you need the help of a heavy-duty towing service. At Heavy Duty Towing San Antonio, TX, we offer top-notch heavy-duty towing and recovery services to customers in San Antonio and the surrounding areas



**Heavy Duty Towing San Antonio**

San Antonio Heavy Duty ...    Subscribe    👍 1    👎    Share    ...

8 views   2 months ago

When you need to transport large or heavy vehicles, you need the help of a heavy-duty towing service. At Heavy Duty Towing San Antonio, TX, we offer top-notch heavy-duty towing and recovery services to customers in San Antonio and the surrounding areas Show more



San Antonio Heavy Duty Wrecker Service

13 views  Feb 20, 2023

"Family owned and operated since 1974. We are available to help you 24/7. The owners of San Antonio Heavy Duty Wrecker Service have been providing top-tier towing and roadside assistance services to customers since 1974. We're proud to be local and veteran owned, and we believe in offering the best-possible services for our community. Customer service is our number-one priority, so you can expect outstanding service every step of the way. From medium-duty towing and heavy-duty towing to accident recovery and more, our highly trained team and state-of-the-art tow trucks are well-equipped to handle almost anything. If you're in a bind, we provide fast and friendly towing and roadside assistance."

56.     The Search Engine Optimization (SEO) of a website refers to the process of designing or refining a website to increase its overall visibility, i.e., maximize the amount of visits received, in search engines such as Google or Microsoft Bing. Many factors, including page content, backlinks, metatags, and URLs affect SEO, which in turn, affects where a website "ranks" or appears on the search engine results page (SERP). Search Engine Marketing (SEM) refers to Internet marketing involving the promotion of a website by increasing their visibility in SERP through paid promotion.

57.     Defendants' www.heavytowingsanantonio.com website is designed to appear in the SERP displaying only generic terms that consumers might associate them with Plaintiffs or any oversized towing service.







58.     In contrast, Defendants' CHACON heavy towing services website, https://chacontowing.com/heavy-duty-towing-san-antonio/, very clearly identifies CHACON as the source of the goods and services in connection with its offering of oversized or heavy equipment towing services.




59.     The metatags and other meta information used for Defendants' www.heavytowingsanantonio.com website appear in the source code elements of their website as follows:

```
<title>#1 Heavy Duty Towing San Antonio TX - 24/7 Commercial Truck Towing
</title>
<meta name="description" content="24hr heavy duty towing and heavy duty
recovery in San Antonio, on I-10, I-410, I-35, I-37, and Greater San
Antonio. Services include heavy duty truck towing, heavy truck recovery,
semi towing, commercial truck towing, work truck towing, RV towing. 210-
985-9099 for San Antonio heavy towing near me.">
<meta name="keywords" content="heavy towing, heavy recovery, heavy duty
towing, commercial truck towing, big truck towing, heavy duty towing san
Antonio, heavy recovery san antonio">
```

60.     In contrast, the metatags and other meta information used for Defendants' CHACON heavy towing services website, https://chacontowing.com/heavy-duty-towing-san-

antonio/, appear in the source code elements of their website as follows:

```
<title>Chacon Towing San Antonio - Towing Services San Antonio</title>
<meta name="description" content="If you are in need of roadside assistance
and aren't sure who to call, contact Chacon Towing today. Our experts will
be there ASAP.">
<link rel="canonical" href="https://chacontowing.com/">
<meta property="og:locale" content="en_US">
<meta property="og:type" content="website">
<meta property="og:title" content="Chacon Towing San Antonio - Towing
Services San Antonio">
<meta property="og:description" content="If you are in need of roadside
assistance and aren't sure who to call, contact Chacon Towing today. Our
experts will be there ASAP.">

<meta property="og:description" content="Chacon Towing Service
Now providing heavy duty towing, light duty towing, and roadside assistance
in both San Antonio and El Paso, Texas.  We are Open 24 Hours, 7 Days
a Week!">
```

61.    Defendants' www.heavytowingsanantonio.com website was designed to mimic the

color scheme, design elements, and layout of Plaintiffs' website, www.benchmarktowing.com.







62.    Defendants purchased Google Ads, or keywords, which allow businesses to "bid" on promotion space in the Google SERP, such that their heavytowingsanantonio.com website appears highest in the SERP when a user searches Plaintiffs' name and trademark "SAN ANTONIO HEAVY DUTY".



63.     Defendants' sponsored ad in the Google SERP prominently displays Plaintiffs'

name and trademark SAN ANTONIO HEAVY DUTY as the title of their page and features no

other information to identify Defendants as the source of the goods or services offered.

64.     Further, Defendants' sponsored ad in the Google SERP is a "click-to-call"

advertisement wherein a mobile user can directly call the number by clicking the link.

65.     The similarity in content of Defendants' website to Plaintiffs' website and

Defendants' intentional packing of SAN ANTONIO HEAVY DUTY and confusingly similar

keywords and metatags in their website, when combined with the fact that Defendants' URL is heavydutysanantonio.com and its website and advertisement does not primarily identify CHACON as the source of the goods or services offered, was calculated and designed to create a likelihood of confusion among consumers.

66.     Defendants' use of Plaintiffs' name and trademark SAN ANTONIO HEAVY DUTY in their website, SEO, SEM, and promotion was intentional.

67.     Defendants' use of Plaintiffs' name and trademark SAN ANTONIO HEAVY DUTY in their website, SEO, SEM, and promotion was illegitimate.

68.     Defendants' use of Plaintiffs' name and trademark SAN ANTONIO HEAVY DUTY in their website, SEO, SEM, and promotion was designed to usurp and actually misappropriated Plaintiffs' business.

69.     Defendants' use of Plaintiffs' name and trademark SAN ANTONIO HEAVY DUTY in their website, SEO, SEM, and promotion has created instances of actual confusion among consumers.

70.     The territory served by Plaintiffs and Defendants is far greater than San Antonio, Texas and includes the IH-35 and IH-10 corridors.

71.     Beginning in the latter part of 2022, Plaintiffs' previous significant volume of house calls in the San Antonio area dwindled to a small amount after Defendants changed their website and use.

72.     Plaintiffs have numerous heavy equipment tow trucks.

73.     Defendants have only one heavy equipment tow truck.

74.     Defendants' website,  www.heavytowingsanantonio.com, was designed to confuse customers that Defendants were Plaintiffs, and that Defendants and Plaintiffs were associated

companies.

75.    Defendants' marketing of SAN ANTONIO HEAVY DUTY and confusingly similar variations thereof was designed to confuse customers to think Defendants were Plaintiffs, and that Defendants and Plaintiffs were associated companies.

76.    Defendants hired https://liftmarketinggroup.com/ to design websites to misappropriate Plaintiffs' SAN ANTONIO HEAVY DUTY business and illegally intercept and misappropriate house calls that were otherwise directed to Plaintiffs.

77.    Defendants hired https://liftmarketinggroup.com/ to design websites use SEO and other internet business capture techniques to repeatedly salt Defendants' web sites with SAN ANTONIO HEAVY DUTY and HEAVY DUTY SAN ANTONIO and confusingly similar variations thereof, to misappropriate Plaintiffs' SAN ANTONIO HEAVY DUTY business illegally intercept house calls that were otherwise directed to Plaintiffs.

78.    Defendants did not use Plaintiffs' trademark in a purely descriptive sense in its promotion and websites.

79.    Defendants did not use Plaintiffs' trademark in legal comparative advertising.

80.    Rather than rely on any reputation of the CHACON name, Defendants engaged in activities to intercept customers seeking Plaintiffs' services and mislead them into thinking it was Plaintiff without telling them the customer had reached a different company.

81.    Defendants set up new websites that used Plaintiff's trademark repetitively to mislead customers into thinking they had contacted Plaintiff.

82.    Defendants set up new websites that used Plaintiff's trademark as Defendants' trademark in a manner that would mislead customers into thinking they had contacted Plaintiff.

83.    Defendants set up new phone numbers to call and when customers called did not

identify themselves as CHACON, but rather avoided identifying who they actually were.

84.    Plaintiffs have common law trademark rights in SAN ANTONIO HEAVY DUTY based on use of the mark in commerce to promote Plaintiffs' heavy equipment towing services.

85.    Plaintiffs have continuously provided their towing services under the SAN ANTONIO HEAVY DUTY name and mark since 2019.

86.    The basis for this lawsuit revolves around the Defendants' heavy equipment towing services operated and advertised under confusingly similar variations of the trademark and service mark SAN ANTONIO HEAVY DUTY.

87.    In 2022, Defendants, with knowledge of Plaintiffs' commercial activities using SAN ANTONIO HEAVY DUTY, started using confusingly similar versions of SAN ANTONIO HEAVY DUTY as a trademark and associating themselves with SAN ANTONIO HEAVY DUTY.

88.    Defendants' website, heavytowingsanantonio.com, for Defendants' towing services advertised under SAN ANTONIO HEAVY DUTY and confusingly similar variations thereof, launched in the summer of 2022.

89.    Plaintiffs began to experience an observable, significant decrease in house call work for its heavy-equipment tow trucks in the latter part of 2022.

90.    Defendants' use of Plaintiffs' SAN ANTONIO HEAVY DUTY mark by Defendants and confusingly similar variations as a trademark and trade name for their heavy equipment towing business is a violation of the Plaintiffs' trademark or service mark and tradename.

91.    At issue in this lawsuit is the fact that the Defendants' heavy equipment towing business, among other things, prominently includes use of confusingly similar variations of

Plaintiffs' SAN ANTONIO HEAVY DUTY mark.

92.     Defendants' misappropriation and exploitation of Plaintiffs' SAN ANTONIO HEAVY DUTY mark and confusingly similar variations thereof and was done for commercial reasons to misappropriate Plaintiffs' heavy equipment towing business.

93.     The SAN ANTONIO HEAVY DUTY mark is used in commerce as a trademark by Plaintiffs for providing information in the field of Emergency roadside assistance services, namely, towing, winch-out and key delivery services; Emergency truck towing; Vehicle towing; Vehicle breakdown towing services and is a legally protectable mark.

94.     Prior to entering into the heavy equipment towing business, Defendants were aware of SAN ANTONIO HEAVY DUTY and its fame.

95.     Defendants misappropriated SAN ANTONIO HEAVY DUTY and confusingly similar variations thereof because the mark was famous and well known in the marketplace.

96.     Defendants adopted and misappropriated confusingly similar variations of Plaintiffs' mark SAN ANTONIO HEAVY DUTY, so that customers would associate SAN ANTONIO HEAVY DUTY with Defendants.

97.     Defendants intentionally copied and misappropriated confusingly similar variations of Plaintiffs' SAN ANTONIO HEAVY DUTY mark to link themselves to Plaintiffs and misappropriate Plaintiffs' business.

98.     By using confusingly similar variations of Plaintiffs' SAN ANTONIO HEAVY DUTY and the goodwill and notoriety of their mark, Defendants were able to gain instant market entry and recognition and misappropriate Plaintiffs' heavy equipment towing business.

99.     By using confusingly similar variations of Plaintiffs' SAN ANTONIO HEAVY DUTY mark and the goodwill and notoriety of their mark, Defendants were able to mislead

customers to think that SAN ANTONIO HEAVY DUTY had authorized Defendants to use their mark.

100.    By using confusingly similar variations of Plaintiffs' SAN ANTONIO HEAVY DUTY mark and the goodwill and notoriety of their mark, Defendants were able to mislead customers to think that SAN ANTONIO HEAVY DUTY and Defendants were associated with each other.

101.    By using confusingly similar variations of Plaintiffs' SAN ANTONIO HEAVY DUTY mark and the goodwill and notoriety of their mark, Defendants were able to mislead customers think that Defendants were sponsored by SAN ANTONIO HEAVY DUTY.

102.    Defendants' use of confusingly similar variations of Plaintiffs' SAN ANTONIO HEAVY DUTY mark on or in connection with their goods or services in commerce constitutes trademark infringement, a false designation of origin, false or misleading description of fact, false or misleading representation of fact, false endorsement, and/or unfair competition which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with SAN ANTONIO HEAVY DUTY, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by SAN ANTONIO HEAVY DUTY.

103.    Defendants' commercial use or promotion of confusingly similar variations of Plaintiffs' SAN ANTONIO HEAVY DUTY mark misrepresents the nature, characteristics, qualities, or geographic origin of Defendants' goods, services, or commercial activities in addition to causing a likelihood of confusion.

104.    Examples of Defendants' commercial use and promotion are the use of confusingly similar variations of SAN ANTONIO HEAVY DUTY as their trademark in the heavy equipment towing business and in internet promotion.

105.    Both Plaintiffs and Defendants use the name SAN ANTONIO HEAVY DUTY and confusingly similar variations in internet promotion and marketing in San Antonio.

106.    Defendants' misappropriation of confusingly similar variations of Plaintiffs' SAN ANTONIO HEAVY DUTY mark is in violation of the trademark laws and Lanham Act.

107.    Defendants' misappropriation of confusingly similar variations of Plaintiffs' SAN ANTONIO HEAVY DUTY mark causes initial interest confusion.

108.    Defendants' misappropriation of confusingly similar variations of Plaintiffs' SAN ANTONIO HEAVY DUTY mark is not a nominative use.

## COUNT I: FEDERAL FALSE DESIGNATION OF ORIGIN OR SOURCE

109.    Plaintiffs incorporate by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

110.    The Lanham Act, 15 U.S.C. § 1125(a)(1), provides in part:

> Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
> 15 U.S.C. § 1125(a)(1).

111.    Plaintiffs' SAN ANTONIO HEAVY DUTY mark is distinctive and indicates to consumers that their goods and their services originate from a single source.

112.    Plaintiffs' SAN ANTONIO HEAVY DUTY mark on their products and services symbolizes the substantial goodwill of Plaintiff resulting in significant sales of their high-quality goods and services.

113.    Defendants' false designations of origin or source are likely to cause confusion, to cause mistake, or to deceive as to the origin or source of Defendants' goods or services.

114.    Defendants' use in commerce of false designations of origin or source is likely to cause consumers to believe that Defendants' SAN ANTONIO HEAVY DUTY branded goods or services and Plaintiffs' SAN ANTONIO HEAVY DUTY branded goods or services come from the same origin or source, or that Plaintiff sponsors or approves the goods or services of Defendant, or that Defendant and Plaintiff are somehow affiliated, connected, or associated with one another when, in fact, they are not.

115.    Defendants' use in commerce of false designations of origin or source is injuring the goodwill of SAN ANTONIO HEAVY DUTY.

116.    The actions of Defendants constitute a violation of the federal Lanham Act, 15 U.S.C. § 1125.

117.    At no time have Plaintiffs authorized Defendants to create, distribute, sell, offer for sale, use, or otherwise put into commerce Defendants' SAN ANTONIO HEAVY DUTY branded goods and services.

118.    Defendants are knowingly and intentionally misrepresenting and falsely designating to the public the affiliation, connection, association, origin, source, endorsement, sponsorship, and approval of Defendants' SAN ANTONIO HEAVY DUTY branded goods and services to create a likelihood of confusion by the public as to the affiliation, connection,

association, origin, source endorsement, sponsorship, and approval of Defendants' products and services.

119.    Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to preliminary and permanent injunctive relief to prevent Defendants' continuing use of false designations of origin or source.

120.    Defendants' false designations of origin or source are irreparably injuring Plaintiffs' goodwill and eroding Plaintiffs' share of market, and unless enjoined by this Court, will continue to do so.

121.    Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to damages for Defendants' violations, an accounting of profits made by Defendants on sales of their goods or services, and recovery of Plaintiffs' costs of this action.

122.    Defendants have willfully and wantonly used false designations of origin or source, and their actions have been calculated to confuse, mislead, or deceive consumers, and to injure the goodwill of Plaintiffs.

123.    The intentional engaging in false designation of origin or source by Defendants makes this an exceptional case entitling Plaintiffs to an award of three times their actual damages and recovery of their reasonable attorneys' fees.

## COUNT II: COMMON LAW TRADEMARK INFRINGEMENT

124.    Plaintiffs incorporate by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

125.    Plaintiffs' use of the SAN ANTONIO HEAVY DUTY mark predates any alleged use by Defendants in the United States.

126.    Defendants' use of the SAN ANTONIO HEAVY DUTY mark is calculated to deceive the relevant consuming public into accepting and purchasing Defendants' products in the

mistaken belief that they are Plaintiffs' products, or that that they are sponsored by, connected with, or supplied under the supervision of Plaintiffs.

127.    Such actions permit, and will continue to permit, Defendants to use and benefit from the goodwill and reputation earned by Plaintiffs to readily obtain customer acceptance of their goods offered for sale, and to give Defendants' goods a salability they would not otherwise have, all at Plaintiffs' expense.

128.    Defendants' aforementioned acts constitute trademark infringement in violation of the common law of the State of Texas.

129.    As a direct and proximate result of Defendants' above-described conduct, Plaintiffs have suffered and will continue to suffer damages in an amount that is not presently ascertainable but will be established at trial.

130.    Unless enjoined by this Court, Defendants' above-described conduct will cause irreparable injury, for which Plaintiffs have no adequate remedy at law, injury to the reputation and goodwill of Plaintiffs as well as confusion and deception among consumers.

131.    Defendants' acts complained of herein have been and are grossly negligent, deliberate, willful, intentional, in bad faith, malicious, with full knowledge and conscious disregard of Plaintiffs' rights, were intended to cause confusion, and to trade off the goodwill in Plaintiffs' SAN ANTONIO HEAVY DUTY mark and confusingly similar variations thereof, making this an exceptional case and entitling Plaintiffs to enhanced damages and attorneys' fees at least as provided under Texas Civil Practices & Remedies Code § 41.003.

## COUNT III: COMMON LAW UNFAIR COMPETITION

132.    Plaintiffs incorporate by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

133.    Defendants' use of Plaintiff's trademark is calculated to deceive the relevant consuming public into accepting and purchasing Defendants' products in the mistaken belief that they are Plaintiffs' products, or that that they are sponsored by, connected with, or supplied under the supervision of Plaintiffs.

134.    Such actions permit, and will continue to permit, Defendants to use and benefit from the goodwill and reputation earned by Plaintiffs to readily obtain customer acceptance of the goods and services offered for sale, and to give Defendants' goods and services a salability they would not otherwise have, all at Plaintiffs' expense.

135.    Defendants' adoption and use of the SAN ANTONIO HEAVY DUTY marks and variations thereof on their goods and services constitutes unfair competition, palming off, passing off, and unjust enrichment in violation of the common law of the State of Texas.

136.    By such use, Defendants has represented that their goods are those supplied by Plaintiffs.

137.    This use creates the likelihood that the public will be confused or deceived.

138.    Defendants' aforementioned acts constitute unfair competition in violation of the common law of the State of Texas.

139.    As a direct and proximate result of Defendants' above-described conduct, Plaintiffs have suffered and will continue to suffer damages in an amount that is not presently ascertainable but will be established at trial.

140.    Unless enjoined by this Court, Defendants' above-described conduct will cause irreparable injury, for which Plaintiffs have no adequate remedy at law, injury to the reputation and goodwill of Plaintiffs as well as confusion and deception among consumers.

141.    Defendants' acts complained of herein have been and are grossly negligent, deliberate, willful, intentional, in bad faith, malicious, with full knowledge and conscious disregard of Plaintiffs' rights, intended to cause confusion, and to trade off the goodwill in Plaintiffs' SAN ANTONIO HEAVY DUTY mark and confusingly similar variations thereof, thus making this an exceptional case and entitling Plaintiff to enhanced damages and attorneys' fees, at least as provided under Texas Civil Practices & Remedies Code section 41.003.

## COUNT IV: TRADEMARK DILUTION IN VIOLATION OF TEX. BUS. & COMM. CODE § 16.103

142.    Plaintiffs incorporate by reference the factual allegations in this complaint as though fully set forth herein.

143.    "Dilution" means dilution by blurring or dilution by tarnishment, without regard to the presence or absence of: (A) competition between the owner of a famous mark and another person; (B) actual or likely confusion, mistake, or deception; or (C) actual economic harm.

144.    The owner of a mark that is famous and distinctive, inherently or through acquired distinctiveness, in this state is entitled to enjoin another person's commercial use of a mark or trade name that begins after the mark has become famous if use of the mark or trade name is likely to cause the dilution of the famous mark.

145.    A mark is considered to be famous if the mark is widely recognized by the public throughout this state or in a geographic area in this state as a designation of source of the goods or services of the mark's owner.

146.    Plaintiffs' SAN ANTONIO HEAVY DUTY mark is a famous mark in that it is widely recognized by the public in a geographic area in this state as a designation of source of the goods or services of Plaintiffs.

147.    Based on the activities described above, Defendants have diluted and continue to dilute the distinctiveness of the Plaintiffs' famous SAN ANTONIO HEAVY DUTY mark under section 16.103 of the Texas Business & Commerce Code.

148.    Defendants' acts complained of above are likely to injure Plaintiffs' business reputation or to dilute the famous, distinctive quality of the SAN ANTONIO HEAVY DUTY mark by, at the very least: (i) eroding the public's exclusive identification of Plaintiffs' famous SAN ANTONIO HEAVY DUTY mark, (ii) lessening the capacity of Plaintiffs' famous SAN ANTONIO HEAVY DUTY mark to identify and distinguish Plaintiffs' goods and services, (iii) associating the Plaintiffs' SAN ANTONIO HEAVY DUTY mark and confusingly similar variations thereof with products and/or services of inferior quality, or (iv) by impairing the distinctiveness of Plaintiffs' famous SAN ANTONIO HEAVY DUTY mark.

149.    Defendants' use of the SAN ANTONIO HEAVY DUTY marks is likely to weaken or otherwise jeopardize Plaintiffs' highly valuable rights in their SAN ANTONIO HEAVY DUTY mark.

150.    Defendants' use of the SAN ANTONIO HEAVY DUTY marks constitutes "dilution by blurring" and causes an association arising from the similarity between Defendants' SAN ANTONIO HEAVY DUTY mark and Plaintiffs' famous SAN ANTONIO HEAVY DUTY mark that impairs the famous SAN ANTONIO HEAVY DUTY mark's distinctiveness.

151.    Defendants' use of SAN ANTONIO HEAVY DUTY constitutes "dilution by tarnishment" and causes an association arising from the similarity between Defendants' SAN ANTONIO HEAVY DUTY marks and Plaintiffs' famous SAN ANTONIO HEAVY DUTY mark that harms the famous SAN ANTONIO HEAVY DUTY mark' reputation.

152.    Pursuant to Texas Business & Commerce Code section 16.103, Plaintiffs are entitled to bring this action to enjoin Defendants from further injuring Plaintiffs' business reputation or diluting the distinctive quality of the Plaintiffs' SAN ANTONIO HEAVY DUTY mark and confusingly similar variations thereof.

153.    Plaintiffs will be irreparably injured unless such action is enjoined by this Court as provided by Texas law.

154.    Defendants' dilution has been willful and intentional, making this case eligible for an award of enhanced profits and damages under Texas law, as well as an award of Plaintiffs' attorneys' fees.

### NOTICE OF LITIGATION HOLD REQUIREMENT

155.    Defendants are hereby notified that they are legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendants know, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereinafter collectively referred to as "Potential Evidence").

156.    As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings

and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, Android-based smart phones, Windows-based smart phones, video cameras and still cameras, and any and all other locations where electronic data is stored.  These sources may also include any personal electronic, digital, and storage devices of any and all of Defendants' agents or employees if Defendants' electronically stored information resides there.

157.    Defendants are hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Defendants' claims and/or defenses.  To avoid such a result, Defendants' preservation duties include, but are not limited to, the requirement that Defendants immediately notify their agents and employees to halt and/or supervise the auto-delete functions of Defendants' electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## JURY DEMAND

158.    Plaintiffs hereby demand a trial by jury.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment in their favor on all counts set forth in their complaint and requests relief as follows:

A.      Issuance of a preliminary and permanent injunction enjoining Defendants, their officers, agents, employees, servants, attorneys, successors, and assigns, and all those controlled by, acting on behalf of, in privity with, or acting in concert or active participation with Defendants, from:

1.      Directly or indirectly using SAN ANTONIO HEAVY DUTY or any other confusingly similar terms, or any design, symbol, or device confusingly similar to SAN ANTONIO HEAVY DUTY;

2.      Falsely designating in any manner the origin or a characteristic of Defendants' goods or services, and false endorsement, unfair competition, and palming off and causing confusion, or causing mistake, or deceiving as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person including but not limited to directly or indirectly using the terms SAN ANTONIO HEAVY DUTY or any other terms confusingly similar to the foregoing terms, or any design, symbol, or device identical or confusingly similar to SAN ANTONIO HEAVY DUTY in the manner used by Defendants;

3.      Directly or indirectly distributing, marketing, offering for sale, or selling goods or services in any fashion that would state, imply, or suggest that such goods or services are themselves SAN ANTONIO HEAVY DUTY's goods or services or are connected to, associated with, sponsored, or endorsed by, or come from SAN ANTONIO HEAVY DUTY; and

4.      Directly or indirectly inducing or enabling any third parties to market, offer for sale, or sell goods or services in any fashion that would state, imply, or suggest that such goods are themselves Plaintiffs' goods or services or are connected to, associated with, sponsored, or

endorsed by, or come from the same source as Plaintiffs' SAN ANTONIO HEAVY DUTY name and mark;

5.     Directly or indirectly engaging in passing off;

6.     Directly or indirectly engaging in unfair competition;

    A.     A Court order directing Defendants to take any and all actions to correct any erroneous impression the public may have derived concerning the source or origin of Plaintiffs' business, goods, or services;

    B.     A Court order declaring that Plaintiffs have valid and enforceable rights for Plaintiffs' SAN ANTONIO HEAVY DUTY trade name, service mark and trademark;

    C.     A Court order directing Defendants to provide an accounting of profit derived from their unlawful actions;

    D.     An award of damages, profits, and costs to Plaintiffs from Defendants paying:

        1.     Plaintiffs' actual damages and any profits of Defendants resulting from their unlawful actions;

        2.     The maximum increase in damages allowed by law for Defendants' unlawful conduct, including but not limited to three times Defendants' profits and Plaintiffs' actual damages;

        3.     Exemplary damages;

        4.     Plaintiffs' reasonable attorney fees;

        5.     Plaintiffs' costs and expenses; and

        6.     Pre-judgment and post-judgment interest; and

E.    Any such other and further relief to Plaintiffs the Court may deem just and proper.

Dated: May 12, 2023.

Respectfully submitted,
/s/ Charles W. Hanor
Charles W. Hanor
Texas Bar No. 08928800

Ayesha M. Malik
Texas Bar No. 24118449

HANOR LAW FIRM PC
750 Rittiman Road
San Antonio, Texas 78209
Telephone: (210) 829-2002
trademarks@hanor.com

*Attorneys for Plaintiffs*